## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**COASTAL LAND DEVELOPMENT**                    **CASE NO. 07-51267-NPO**
**CORPORATION,**

**DEBTOR.**                                                              **CHAPTER 11**

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR ASSESSMENT OF
## DAMAGES AND FOR SANCTIONS

On April 2, 2009, there came on for hearing (the "Hearing"), the Motion for Assessment of

Damages and for Sanctions (the "Motion for Sanctions") (Dkt. No. 185) filed by Dawn Investments,

LLC ("Dawn") and the Memorandum Brief in support thereof ("Dawn Memorandum Brief") (Dkt.

No. 203), and the Memorandum Brief in Response to the Motion for Sanctions ("Bertucci

Memorandum Brief") (Dkt. No. 214) filed by Bertucci & Company ("Bertucci Co.") and Felix

Bertucci, Jr. ("F. Bertucci").  At the Hearing, Nicholas Van Wiser appeared on behalf of Dawn, and

F. Bertucci appeared *pro se* for himself and for Bertucci Co. (collectively, "Bertucci").[1]  The Court,

having considered the pleadings, the evidence presented at the Hearing, and relevant legal

authorities, concludes for the reasons discussed below that the Motion for Sanctions is well taken

and should be granted as set forth herein.[2]

---

[1]  F. Bertucci has represented to the Court that Bertucci Co. is not a corporation, but is a sole proprietorship.  On March 4, 2009, this Court reset this matter to April 2, 2009, to allow Bertucci time to file a written response to the Motion for Sanctions and to obtain the assistance of counsel in this matter.  Bertucci, nevertheless, submitted the Bertucci Memorandum Brief and appeared at the Hearing without assistance of counsel.

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

**Jurisdiction**

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A), (N), and (O). Notice of the Hearing on the Motion for Sanctions was proper under the circumstances.

**Facts**

1.    Events leading up to the bankruptcy filing have been summarized by Dawn as follows:

> Before the filing of the bankruptcy, the Debtor had two primary creditors, being Parish National Bank ("Parish National"), who was owed approximately $4.3 million dollars for the Debtor's acquisition of the Brodie Road property. The second creditor was U.S. Capital Incorporated ("U.S. Capital"), which was purportedly owed $6,000,000.00, whereby it financed the acquisition of the LeMoyne Boulevard property.[3]
>
> The Parish National debt was secured by a first deed of trust on the Brodie Road property, [sic] the U.S. Capital debt was secured by a second deed of trust on the Brodie Road property, a first deed of trust on the LeMoyne Boulevard property, a second deed of trust on the property owned by Winwood Estates in Stone County, Mississippi, and the Beau View Notes.
>
> On August 15, 2007, U.S. Capital began publication of its foreclosure sale on the Brodie Road property and the LeMoyne Boulevard property. On August 30, only 2 weeks after publication commenced, U.S. Capital conducted its foreclosure. At the foreclosure sale, Ike Thrash and Dawn Investments was [sic] the only bidder present. Dawn Investments (a company wholly owned by Ike Thrash) bid $5,960,000.00. As previously indicated, the foreclosure sale was improperly advertised and therefore void in accordance with the provisions of Mississippi Code Ann. Section 89-1-55 . . . .

_____

[3] These properties were among the Debtor's principal assets and consisted of 21 acres on the Back Bay of Biloxi, Mississippi west of I-110 known as the "Brodie Road property," and 175 acres on the Back Bay of Biloxi, Mississippi east of I-110 known as the "LeMoyne Boulevard property." (Dawn Memorandum Brief at p.1). The LeMoyne Boulevard property also is referred to by the parties as the Southwind Golf Course. (Objection to Sale of Assets) ("Bertucci Objection") (Dkt. No. 124), (Joint Motion to Strike and for Sanctions) ("Joint Sanction Motion") (Dkt. No. 125), (Bertucci Memorandum Brief).

Unaware of this defect, Dawn Investments wired $5,960,000.00 to U.S. Capital in exchange for a Trustee's Deed in favor of Dawn Investments. Upon learning of the defect, Dawn requested that U.S. Capital return the money, and U.S. Capital declined to do so. Suit was filed against U.S. Capital in Chancery Court. In the meantime, the Debtor, in order to prevent re-foreclosure, filed the present Chapter 11 proceeding.[4] U.S. Capital removed the action to District Court and was subsequently removed [sic] to U.S. Bankruptcy Court.

On September 28, 2007, Dawn Investments acquired the Parish National debt and collateral securing same, and on December 6, 2007, Dawn acquired the U.S. Capital debt in consideration of allowing U.S. Capital to retain the money paid in connection with the foreclosure sale and an additional payment of $425,000.00

(Dawn Memorandum Brief at pp. 2-3)(footnotes added).

2.      On January 31, 2008, the Debtor filed a Motion to Sell Property Free and Clear of Liens and Encumbrances ("Motion to Sell") (Dkt. No. 114) pursuant to 11 U.S.C. § 363(f),[5] in which it requested approval of an Asset Purchase and Settlement Agreement (the "Agreement")[6] allowing the sale of the Brodie Road and LeMoyne Boulevard properties to Dawn.

3.      The Debtor entered into the Agreement with Dawn, as the "Purchaser" under the Agreement, on January 30, 2008. The Agreement listed a purchase price of $11,331,373.24 for purchased assets, and provided that the Purchaser was to pay $500,000.00 in cash to the Debtor at closing. The remaining $10,831,373.24 of the purchase price was to be offset against debts owed on the Brodie Road and the LeMoyne Boulevard properties.

---

[4] On September 6, 2007, Coastal Land Development Corporation (the "Debtor") filed a voluntary petition for relief (the "Petition") (Dkt. No. 1) pursuant to chapter 11 of the Bankruptcy Code.

[5] Hereinafter all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

[6] Dawn Exhibit No. 1.

4.      The Motion to Sell was noticed for objections (the "Notice") (Dkt. No. 115).  The

Notice stated that the Motion to Sell "seeks to sell the Real Property located on Brodie Road and

LeMoyne Blvd. to Dawn Investments for the sum of $500,000.00, plus a release of all indebtedness

to Dawn Investments, LLC, a release of all other collateral securing the indebtedness to Dawn

Investments, LLC and other consideration as set forth in the Motion."  (Notice at ¶ 1).

5.      On February 11, 2008, the Bertucci Objection was filed by Bertucci and signed by

F. Bertucci, *pro se.*  The Bertucci Objection sets forth the following:

> 1.      Felix J. Bertucci, Jr. and Bertucci & Company, and others has [sic] an
> ownership interest in one of the properties, namely the Southwind Golf Course, that
> has not been previously disclosed by the Bankrupt, and any interest that I may own
> in the property is not protected.
>
> 2.      Coastal Land Development is a partner and has an ownership interest
> in Resorts International Properties, LLC, which was formed to own and develop the
> former Southwind Golf Course property that has not been disclosed to the Court.
>
> 3.      Resorts International Properties, LLC, and or Bertucci & Company
> and Felix J. Bertucci, Jr. has recently learned of the impending sale of the asset was
> never notified of any Motion to Sell or Motion to Shorten Noticing Time for any sale
> of the property.
>
> 4.      Bertucci & Company and Felix J. Bertucci, Jr. is [sic] a creditor in an
> amount in excess of $79,000.00 from the purchase of the property that has not been
> previously disclosed by the Bankrupt, and that interest is not properly protected.
>
> 5.      Felix J. Bertucci, Jr. is in negotiation with several parties who have
> indicated that they would pay substantially more for the property than the current
> sale price.
>
> 6.      Wherefore considered Bertucci & Company, Felix J. Bertucci, Jr.,
> and Resorts International Properties, LLC, respectfully request that this Court stay
> the sale of the asset until such time as all ownership interests can be determined and
> a reasonable and fair price for the property is realized.

(Bertucci Objection at pp. 1-2).

6.      Also on February 11, 2008, the Joint Sanction Motion was filed by Dawn and the Debtor, in which the movants requested that the Bertucci Objection be stricken and sanctions be awarded for the filing of a frivolous pleading.

7.      In the Joint Sanction Motion, it was claimed that the Bertucci Objection was filed in violation of Rule 9011 of the Federal Rules of Bankruptcy Procedure, Rule 11 of the Federal Rules of Civil Procedure, and the Mississippi Litigation Accountability Act, in that it was filed for an improper purpose and contained false statements and misrepresentations to delay closing of the sale contemplated by the Agreement between Dawn and the Debtor.  Additionally, the movants indicated that Bertucci erroneously asserted a claim to the LeMoyne Boulevard property by virtue of the LLC Agreement, discussed herein.[7]

8.      A hearing was scheduled for February 21, 2008, and on that date, an Order Granting Motion to Sell (Dkt. No. 154) and overruling the Bertucci Objection was entered.  The Court approved the Agreement and authorized the sale of the Brodie Road property and LeMoyne Boulevard property to Dawn free and clear of liens and encumbrances pursuant to § 363(f).

9.      On March 17, 2008, the Debtor filed a Motion to Dismiss Chapter 11 Case ("Motion to Dismiss") (Dkt. No. 166) setting forth the following:

> On March 6, 2008, the Debtor consummated the sale of certain assets of the Bankruptcy Estate.  The sale of the assets paid all secured creditors in full.  The net proceeds of the sale were approximately $461,000.00, which the Debtor believes will be sufficient to pay remaining creditors.  It would be more efficient to pay claims against the Bankruptcy Estate outside the bankruptcy context.

(Motion to Dismiss at ¶ 3).

----

[7] *See infra* pp. 9-10.

10.    On April 1, 2008, an Agreed Order Dismissing Chapter 11 Case[8] ("Order Dismissing") (Dkt. No. 175) was entered on the Motion to Dismiss.  The Order Dismissing contained the following language:

> [T]his Court shall retain jurisdiction with respect to certain pleadings filed styled, *Objection to Sale of Assets and Shortening of Time and Motion to Stay the Sale of the Assets* (**DK#124**) and *Joint Motion to Strike and for Sanctions and for Expedited Hearing* (**DK#125**), for the purpose of seeking imposition for sanctions and other relief to be filed against Felix J. Bertucci, Jr. and Bertucci & Company.

(Order Dismissing at ¶ 4).

11.    On June 25, 2008, an Order Closing Case and Retaining Jurisdiction for Consideration of Claims and Sanctions Against Felix Bertucci ("Order Closing") (Dkt. No. 180) was entered.  The Order Closing provided that jurisdiction be retained to consider matters related to claims for costs and sanctions of Dawn against Bertucci pursuant to the Joint Sanction Motion.

12.    On September 12, 2008, Dawn filed its Motion for Sanctions for the imposition of costs and sanctions against Bertucci which Dawn incurred in responding to the Bertucci Objection.[9]  The Motion for Sanctions asserts that:

> As a result of the actions of Felix Bertucci in asserting a claim and interest in the property in question and objecting for the sole purpose of delaying or otherwise impeding the Settlement Agreement, your creditors Ike Thrash and Dawn Investments, LLC, have incurred costs, expenses and attorney's fees in the amount of $7,300.00, as indicated by the Affidavit of Nicholas Van Wiser . . . .

---

[8] The Order Dismissing was agreed to by the Debtor and by Dawn.  Dawn had filed a responsive pleading (Dkt. No. 172) to the Motion to Dismiss that requested the Court to retain jurisdiction with respect to the matter.

[9] It is noted that both the Motion for Sanctions and the prior Joint Sanction Motion are not identical, but deal with the same matter and request sanctions against Bertucci.  The Court will consider the relief requested in the Motion for Sanctions.

(Motion for Sanctions at ¶ 4).[10]

13.     On September 30, 2008, an Order (Dkt. No. 190) was entered to reopen the case to consider Dawn's claims for costs and sanctions against Bertucci.

14.     The Motion for Sanctions was set for hearing on March 4, 2009,[11] at which time the Court reset the matter to April 2, 2009, to allow Bertucci additional time to submit a memorandum brief and to obtain counsel.[12]  Briefs were submitted by the parties prior to the Hearing.

**The Hearing**

**1.  F. Bertucci's Testimony.**

At the Hearing on the Motion for Sanctions, F. Bertucci indicated that he had a long-established business relationship with Richard Landry ("Landry"), the President of the Debtor, in which he bought and sold property with Landry as a developer.[13]  In his presentation to the Court, F. Bertucci referred to several agreements or transactions with Landry, the Debtor, or others in his attempt to establish his interest in the LeMoyne Boulevard property.

---

[10] In its Motion for Sanctions, Dawn requested $7,300.00 in attorney's fees and expenses incurred in opposing the Bertucci Objection and $5,000.00 in sanctions to deter wrongful acts. In the Dawn Memorandum Brief filed subsequently, the relief requested was limited to sanctions in the amount of attorney's fees and expenses of $7,300.00.  At the Hearing, counsel for Dawn was granted a request to supplement his affidavit, admitted as Dawn's Exhibit No.3, to include additional attorney's fees and expenses that have been incurred since the previous affidavit.  The supplemental affidavit was filed on April 10, 2009.  (Dkt. No. 216).  Counsel for Dawn requests additional attorney's fees and expenses in the amount of $6,420.00 for a total of $13,720.00.

[11] At this point, the case assignment was changed from Judge Edward R. Gaines to Judge Neil P. Olack.

[12] *See supra* note 1.

[13]  F. Bertucci provided in the Bertucci Memorandum Brief that Bertucci is in the real estate business and has been buying and developing property for over 35 years.

First, F. Bertucci asserted that Bertucci had an option to purchase the LeMoyne Boulevard property (the "Option Agreement").[14]  F. Bertucci indicated at the Hearing that Landry was to provide funds to "keep the option going," and that Landry indicated to F. Bertucci that Landry needed to put the property in his company's name to obtain the financing.  Importantly, F. Bertucci admitted that he signed a quitclaim of Bertucci's interest, if any, in the LeMoyne Boulevard property to Landry for the purpose of the financing.[15]  He stated that there was a closing on the LeMoyne Boulevard property in January of 2006.  F. Bertucci further admitted at the Hearing that the LeMoyne Boulevard property was actually purchased by Landry's company, the Debtor.[16]  Ultimately, he acknowledged that he has never had any ownership interest in the Debtor, and did not have any ownership interest in the LeMoyne Boulevard property.

Second, in another attempt by F. Bertucci to document Bertucci's interest in the LeMoyne Boulevard property, he claimed there was a "partnership agreement" with Landry.[17]  In this alleged

---

[14]  In the Bertucci Memorandum Brief, F. Bertucci indicated that Bertucci Co. contracted to buy the LeMoyne Boulevard property through an Option Agreement while F. Bertucci was acting as the real estate broker of record.  (Bertucci Memorandum Brief at pp. 1-2).

[15]  In addition to the quitclaim deed, Bertucci signed a release of any interest in the subject property. *See infra* p. 12.

[16]  Therefore, the Option Agreement did not result in the purchase of the property by either Bertucci Co. or Landry as the 50% assignee to the Option Agreement.

[17]  F. Bertucci alluded to either oral agreements or other written agreements regarding his arrangements with Landry or the Debtor.  However, if those agreements existed, their existence was not proved at trial.  Additionally, if there were any oral agreements regarding transfers of an interest in real estate, they may have violated Mississippi's Statute of Frauds.  In Roffman v. Wilson, 914 So.2d 279, 282 (Miss. Ct. App. 2005), the court stated that "[a]greements to transfer an interest in land are clearly within the statute of frauds. McIlwain v. Doby, 238 Miss. 839, 854, 120 So.2d 553, 560 (Miss. 1960). Mississippi Code Annotated § 15-3-1(c) (Rev.2003) states that the statute of frauds does require that all contracts involving the transfer of land must be in writing. Allred v. Fairchild, 785 So.2d 1064, 1069 (Miss. 2001)."  *See also* Coughlin v. Franklin Squires Companies, LLC, 2008 WL 687403, *3 (S.D. Miss. 2008)("[c]ontracts involving the

agreement with Landry, Landry would arrange for financing for the purchase of the LeMoyne Boulevard property in exchange for a one-half interest in the option.[18] The written document he introduced was the Limited Liability Company Agreement (the "LLC Agreement") that purportedly gave him and the Debtor an interest in Resorts International Properties, LLC ("Resorts International").[19] The agreement, however, did not give F. Bertucci, Bertucci Co., or Resorts International an interest in the Debtor company or in the real property known as the LeMoyne Boulevard property.

Third, F. Bertucci claimed to be a creditor of the Debtor. He asserted that a portion of his real estate commission, in the amount of $79,000.00, was lent to the Debtor at the closing when the Debtor acquired the LeMoyne Boulevard property. He claimed to be listed on the closing statement as a creditor for funds lent to the Debtor. F. Bertucci was unable to produce any documentation at the Hearing to show there was an agreement to repay those alleged funds to him. F. Bertucci asserted that in the schedules filed subsequently by the Debtor he was omitted from the list of creditors for the money he purportedly lent at the closing. Although F. Bertucci claimed that

_____

transfer of land must be in writing." (quoting *Allred*, 785 So. 2d at 1069)).

[18] The Option Agreement for the purchase of the LeMoyne Boulevard property was dated November 2004 and was between Southwind Golf, LLC ("Southwind") and Bertucci Co. In January of 2005, Bertucci assigned a one-half ownership interest in the option to Richard L. Landry, III. As pointed out by David Wheeler Southwind did not even own the LeMoyne Boulevard property. *See infra* pp. 10-11.

[19] Bertucci's Exhibit No.1 at trial was an LLC Agreement dated February 18, 2005, forming Resorts International among Bertucci Co., the Debtor, and Templeton Fowlkes ("Fowlkes"). The LLC Agreement states that the business of Resorts International is to engage in ownership, management, or operation of real estate. (LLC Agreement at ¶ III.A). The members and interests were listed as Bertucci Co. at 40%, the Debtor at 40%, and Fowlkes at 20%. (LLC Agreement at ¶ IV.A.). The LLC Agreement indicated that the capital contributions of Bertucci Co. and the Debtor were to be made by transfer and conveyance to Resorts International of $200,000.00 cash.

Bertucci was an unsecured creditor for the funds advanced, Bertucci did not file a proof of claim in the bankruptcy proceeding.[20]

Finally, F. Bertucci indicated that after the Debtor acquired the LeMoyne Boulevard property, he and Landry continued in efforts to sell the property. He stated that they were attempting to close a loan for the sale of the LeMoyne Boulevard property when they learned that the property had been foreclosed.[21]

### 2. Wheeler's Testimony.

David Wheeler ("Wheeler"), a real estate attorney, testified at the Hearing as a witness for Dawn. Wheeler examined the title for the LeMoyne Boulevard and Brodie Road properties in 2007 after the filing of the bankruptcy proceeding in connection with the sale of the property to Dawn. He found that the Debtor was vested with title to those properties. He testified that there was nothing in the land records to show that F. Bertucci or Bertucci Co. had any type of ownership interest in the property.

Wheeler further testified that a warranty deed was recorded, at the time of the January 2006 closing, from the owners of the LeMoyne Boulevard property at that time, Steve Wilson and John Boothby, to the Debtor. He also found that quitclaim deeds were recorded at the same time from F. Bertucci and Bertucci Co. to the Debtor, dated January of 2006.

Wheeler also testified that there was recorded a memorandum of option between F. Bertucci and Bertucci Co. and Southwind, dated November of 2004 and filed January of 2005. He stated that there was an assignment of a one-half interest in the option to Landry. The option was for an initial

---

[20] *See infra* note 24.

[21] As previously indicated, Dawn was the purchaser at the foreclosure.

90 days with three additional 90-day options, but there was nothing recorded to show whether renewals were exercised. Wheeler testified that even if the options were exercised, the effect of the quitclaim deeds in January 2006 would have been to extinguish any option, noting that the last option date would have expired in November 2005. He further stated that the option was between Southwind and Bertucci, but that Southwind did not own any interest in the relevant properties.

### 3. Thrash's Testimony.

Ike Thrash ("Thrash"), the President and sole owner of Dawn , also testified at the Hearing. He stated he had been in the real estate business for thirty-six (36) years and that he primarily bought, sold, and built apartment complexes. He saw the LeMoyne Boulevard and Brodie Road properties advertised in the newspaper for foreclosure and bought the properties at the sale. Although the foreclosure turned out to be defective, the almost $6 million wired to U.S. Capital was not returned. He bought the first mortgage on the Brodie Road property to protect his interest increasing his investment to $12 million. He then worked out an agreement to pay one-half million dollars to Landry to acquire his interest in the property and another one-half million to U.S. Capital for the relinquishment their holdings. Approval for the Agreement was sought through the bankruptcy proceeding.[22]

Thrash stated that the monthly interest accrual, including the default rate of interest, on both notes was "about a quarter of a million dollars a month." Because of the high interest accrual on these properties, time was of the essence for approval of the Agreement. Thrash testified that the only objection to the sale was by Bertucci, and that he called F. Bertucci on the phone to ask why

---

[22] Dawn's Exhibit No.1 at the Hearing was the Agreement. Dawn's Exhibit No. 2 was the Motion to Sell in which approval of the Agreement was sought.

Bertucci filed it.  He testified that F. Bertucci told him that for $250,000.00 he would "cancel" his objection.

**4.     Other Evidence.**

Also admitted into evidence at the Hearing was Dawn's Exhibit No.3, a Release dated January of 2006 ("the Release"), in which Bertucci released unto the Debtor "all of their right title and interest in that property described on the attached Exhibit A and the option agreement dated November 20, 2004 by and between Bertucci and Company and Southwind Golf, LLC and more particularly any rights of ownership or rights to sell property."  (Release at ¶ 1).

**Discussion**

**1.  The Claim for Sanctions Against Bertucci.**

Dawn asserts that Bertucci filed the Bertucci Objection for improper purposes to delay or impede the settlement with Dawn, and requests sanctions in the amount of attorney's fees incurred by Dawn as a result of the filing. Dawn claims the filing of the Bertucci Objection was a violation of Rule 9011 of the Federal Rules of Bankruptcy Procedure.

Rule 9011 requires that pleadings filed with the court not be filed for improper purposes.  By presenting a pleading to the court, even an unrepresented person is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the following:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

Dawn also contends the Court has the inherent power to sanction litigants for bad faith conduct. See In re Weiss, 111 F.3d 1159, 1171 (4th Cir. 1997)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44, 111 S.Ct. 2123, 2132-33, 115 L.Ed.2d 27 (1991)). In Weiss, the Fourth Circuit held "a court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions such as Rule 9011." Weiss, 111 F.3d at 1171 (citing Chambers, 501 U.S. at 46-50).

Dawn asserts that the filing by Bertucci is sanctionable for several different reasons:

1.  Bertucci's claim to an ownership interest in property of the estate was false.
2.  Bertucci's interposing an objection was intended to delay the matter at the expense of the Debtor and of Dawn Investments, LLC.
3.  Bertucci was not a creditor of Coastal as by his own acknowledgment, any agreement between Bertucci and Coastal would have been by virtue of this ersatz "partnership agreement" and not as a creditor.
4.  Bertucci lacks standing based upon his lack of any ownership interest to file any objection.
5.  Bertucci called Ike Thrash before the hearing and offered to drop his objection for the payment of $200,000.00[23] in cash.

(Dawn Memorandum Brief at pp. 4-5) (Dkt. No. 203). Dawn argues that this Court should impose sanctions against Bertucci in accordance with the provisions of Rule 9011 of the Uniform Bankruptcy Rules, § 105, and the Court's inherent power. Id.

_____

[23] On the witness stand, Thrash testified that the amount requested by Bertucci was $250,000.00.

### A.  Bertucci's Alleged Interest in LeMoyne Boulevard Property.

F.  Bertucci did not produce any documentation at the Hearing to establish an interest of Bertucci in the LeMoyne Boulevard property.  On the contrary, the undisputed proof established that Bertucci had no interest in the property or in any entity that had an interest in the property.

Bertucci asserted an ownership interest in the LeMoyne Boulevard pursuant to the Option Agreement with Southwind.  However, evidence at the Hearing indicated that Southwind did not actually own the property.  Therefore, Bertucci did not acquire an interest in the LeMoyne Boulevard property through the Option Agreement.  However, even if Bertucci did have any interest in the LeMoyne Boulevard property through the Option Agreement, the interest would have terminated at the time Bertucci executed the quitclaim to the Debtor, as well as the separate Release, in January of 2006.  These documents, alone,  provide clear proof that Bertucci had no interest in the LeMoyne Boulevard property.

F.  Bertucci also attempted to show that Bertucci acquired an interest in the LeMoyne Boulevard property pursuant to the LLC Agreement that established Resorts International.  Evidence at the Hearing showed that Resorts International did not, in fact, own an interest in the LeMoyne Boulevard property.  Bertucci's alleged interest in Resorts International did not give Bertucci an interest in the LeMoyne Boulevard property.  Additionally,  the evidence established that Bertucci had no interest in the Debtor.  Thus, any ownership interest in Resorts International by the Debtor did not give Bertucci an interest in the LeMoyne Boulevard property.

### B.  Bertucci's Alleged Creditor Status.

F.  Bertucci also asserted creditor status in Bertucci's attempt to claim a right to file the Bertucci Objection.  F.  Bertucci asserted that Bertucci lent money to the Debtor at the closing when

the Debtor acquired the LeMoyne Boulevard property.  F. Bertucci was unable to produce any documentation or acknowledgment to show there was an agreement with the Debtor for any funds advanced by Bertucci at the closing to be repaid by the Debtor or to substantiate Bertucci's claim to be a creditor of the bankruptcy estate.  Moreover, Bertucci was not listed in the Debtor's bankruptcy schedules as a creditor for the debt owed.  Finally, Bertucci did not file a proof of claim in the bankruptcy proceeding.[24]

### C.  Additional Considerations in Assessing Sanctions Against Bertucci.

The Court concludes that Bertucci had no legal ownership in the subject property and no creditor status in the bankruptcy proceeding upon which to have based the Bertucci Objection.  The Court must now consider what other reasons or motivation Bertucci may have had to object. Testimony and evidence at the Hearing showed that Bertucci and Landry had been attempting to negotiate sales of the LeMoyne Boulevard property for over a year. The foreclosure, bankruptcy, and subsequent Agreement with Dawn precluded Bertucci from participation in any profits from the sale of the property.  The testimony from Thrash that F. Bertucci offered to drop the Bertucci Objection upon payment of $250,000.00 strongly indicates F. Bertucci attempted to use the Bertucci Objection as leverage to profit from the sale to Dawn.  Accordingly, the Court finds that the Bertucci Objection was filed for improper purposes.

---

[24] The bar date for filing proofs of claim was established in the Order Setting the Final Date for Filing Proofs of Claim (Dkt. No. 12) and in the Notice of the Meeting of Creditors (Dkt. No. 22).  The deadline for all creditors except a governmental unit was set for December 11, 2007.  The Bertucci Objection was filed on February 11, 2008, subsequent to the claims bar date.

F. Bertucci's lack of credibility also is established by his contradictory testimony[25] and by the unsupported positions regarding Bertucci's ownership interest in the LeMoyne Boulevard property and creditor status in the Debtor's bankruptcy case. As a consequence, Bertucci failed to establish a good faith basis in fact or law upon which to have filed the Bertucci Objection.

### D.  Requirements of Rule 9011(c)(1)(A) were met, waived, or forfeited.

Rule 9011(c)(1)(A), commonly referred to as the "safe harbor provision," provides: "A motion for sanctions . . . may not be filed with or presented to the court unless, with 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . ."

In the instant case, the Motion to Sell was heard on an expedited basis. The Debtor filed its Motion for Authority to Shorten Noticing Time (Dkt. No. 116) for the Motion to Sell, citing the prospective purchaser's desire "to take possession of the property as soon as practicable and the Debtor('s) desire to consummate the sale as soon as possible." Id. at ¶ 3. The Court entered the Order Shortening Noticing Time (Dkt. No. 119), reducing the time for objecting to ten (10) days (Dkt. No. 115). The Bertucci Objection was then filed. On the day it was filed, the Debtor and Dawn filed the Joint Sanction Motion. The Motion to Sell was heard ten (10) days after the Bertucci Objection was filed. While the Court overruled the Bertucci Objection, it did not rule on the Joint Sanction Motion at the hearing on the Motion to Sell. Instead, the issue was reserved.

The present Motion for Sanctions was filed approximately seven (7) months after the Joint Sanction Motion. At no time during that period did Bertucci withdraw or appropriately correct the

---

[25] For example, F. Bertucci testified that the closing statement showed the alleged loan to the Debtor. When asked to identify the entry on the closing statement, he admitted that it was not reflected anywhere on the closing statement.

Bertucci Objection.  Instead, he continued to pursue positions detailed herein in violation of Rule 9011(b) in the Bertucci Memorandum Brief and at the Hearing.  Given the expedited hearing on the Motion to Sell, notice of the sanction issue contained in the Joint Sanction Motion, the time periods prescribed by the Court, and the facts and circumstances presented at the Hearing, the Court finds that the requirements of Rule 9011(c)(1)(A) were met.

In addition, some courts have held that the failure to raise the safe harbor provision may operate as a waiver or forfeiture.  Troost v. Kitchin (In re Kitchin), 327 B.R. 337, 361 (Bankr. N.D. Ill. 2005)("21 day safe harbor provision may be waived or forfeited"); Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 679 (4th Cir. 2005)(recognizing that safe harbor protection, though mandatory, could be forfeited by a defendant who fails to timely raise); Ginsberg v. Evergreen Security Ltd., (In re Evergreen Security, Ltd.), 391 B.R. 184, 188 (M.D. Fla. 2008)(recognizing, without deciding whether safe-harbor provision may be waived, bankruptcy court's authority to sanction under § 105 and court's inherent authority); Browne v. National Association of Securities Dealers, Inc., 2006 WL 3770505, *7 (N.D. Tex. 2006)(recognizing that a party may waive the safe harbor provision).   Here, Bertucci never alleged that Dawn failed to satisfy the requirements of Rule 9011(c)(1)(A).

### 2.  Effect of Bertucci's Failure to Seek Assistance of Counsel.

The Court is mindful that Bertucci is proceeding in this matter without counsel.  The Court admonished Bertucci prior to the Hearing that the matter was complex and that he should consider obtaining counsel.  Bertucci, having been advised of the need for counsel in this legal matter, has proceeded *pro se* and is charged with knowledge of the applicable law.

It has been this Court's observation that "[W]hile courts generally grant *pro se* parties some leniency, 'the right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.'" In re McDuffie, No. 04-53411-NPO, *9 (Bankr. S.D. Miss. 2007)(quoting Birl v. Estelle, 660 F. 2d 592, 592 (5th Cir. 1981)). More "importantly, special consideration is not available to a *pro se* debtor acting in bad faith. McDuffie, No. 40-53411-NPO at *9 (citing Salter v. IRS (In re Salter), 251 B.R. 689 (S.D. Miss. 2000), aff'd without opinion, 234 F. 3d 28 (5th Cir. 2000) (failure of *pro se* appellant to file a brief was a "dilatory tactic")).

In Salter, the court pointed out that, "[t]he rules of procedure and the rules governing bankruptcy proceedings apply equally to everyone." Salter, 251 B.R. at 692. Similarly, in O'Hara v. Petal Police Department, the district court observed that, "[t]he Fifth Circuit has consistently held that 'Rule 11 applies fully and completely to actions filed by *pro se* litigants.' 2007 WL 4165391, *4 (S.D. Miss. 2007)(quoting Hicks v. Bexar County, Texas, 973 F. Supp. 653, 687 (W.D. Tex.1997)).

Further clarity emerges when Rule 11 of the Civil Rules of Procedure and Rule 9011 of the Federal Bankruptcy Rules of Procedure are analogized. One court that has done so has offered the following guidance regarding *pro se* litigants:

> Since Rule 11 and Rule 9011 are substantially similar, cases interpreting Rule 11 guide the court in application of Rule 9011. See eg. In re Case, 937 F.2d 1014 (5th Cir.1991). These rules provide that a litigant certifies by signing his pleading that he has conducted a reasonable inquiry into the facts as well as the law that the document embodies and that the pleading is not interposed for purposes of delay, harassment or to increase the cost of litigation. Thomas v. Capital Security Services, Inc., 836 F.2d 866 (5th Cir.1988). A pro se litigant who signs a pleading or other paper or affidavit is to be held to the same standards as any attorney. Business Guides v. Chromatic Communications Ent., 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

In re Cauthen, 152 B.R. 149, 154 (Bankr. S.D. Tex. 1993).

In Long v. Thommesson, 2006 WL 1222032, *6 (N.D. Tex. 2006), the district court provided further guidance on the application of Rule 9011(b) by rejecting the argument that *pro se* litigants are subject to a more lenient standard than attorneys when filings with the court. The district court held that Rule 9011 "clearly applies to pro se litigants . . . and subjects them to the same standards as an attorney." Id. at *6 (quoting In re Schaefer, 154 B.R. 227, 237 (Bankr. S.D. Tex 1994)). The court further articulated that "[t]he plain language [of the statute] requires that any filing 'by an attorney or unrepresented party' must meet the standards set forth in Rule 9011(b); no distinction is made between the standards applied . . . . [g]ood faith is no longer enough to protect a litigant from sanctions. Long, 2006 WL 1222032, *6 (citing Childs v. State Farm Mut. Auto Ins. Co., 29 F.3d 1018, 1024 (5th Cir.1994)). Importantly, the Long court noted, a *pro se* litigant does not have a license to harass, but an affirmative duty to "only present the Bankruptcy Court with filings that met the standards of Rule 9011(b)." Long, 2006 WL 1222032, *6 (citing Farguson v. Mbank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986)). In applying the relevant case law to the instant case, Bertucci clearly failed to meet the standards contained in Rule 9011.

Similar to the Court's actions in this case, the district court in Taylor v. County of Copiah noted that it implored its *pro se* litigant to hire or seek advice of counsel to appreciate the gravity of the claims. 937 F. Supp 580, 586 (S.D. Miss 1995). In Taylor, "After [the] plaintiff appeared perplexed about the operation of the statute of limitations, [the] court even recessed the hearing on defendants' motion for summary judgment to give plaintiff an [extra] opportunity to hire and/or consult with counsel." Id. at 586. The plaintiff in Taylor, did not heed the court's advice and proceeded without benefit of counsel. Id.

In the case at bar, this Court reset the hearing on the Motion for Sanctions to allow Bertucci additional time to submit a memorandum brief and to obtain counsel.[26]  Despite the Court's efforts to explain the complexity and seriousness of the matter, Bertucci submitted the Bertucci Memorandum Brief and conducted the Hearing without the assistance of counsel.

**3.  Award of Attorney's Fees and Expenses.**

Having determined that Bertucci acted in violation of Rule 9011(b) by filing the Bertucci Objection, the Court finds that an award of reasonable attorney's fees and expenses to Dawn is an appropriate sanction.  Rule 9011(c) provides in pertinent part:[27]

> **(c)  Sanctions.**  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> (1) How Initiated.
> (A) By Motion.  A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). [I]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.
>
> (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitation in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and

---

[26] *See supra* note 1.

[27] Such an award also is an appropriate sanction under § 105(a) and the Court's inherent power.  *See* In re Smyth, 242 B.R. 352, 360 (W.D. Tex. 1999)(stating even if Rule 11 could not provide foundation for imposition of sanctions, bankruptcy court has inherent authority, as well as power under § 105); In re Carruth, 2007 WL 5117148, *3 (Bankr. N.D. Miss.2007) (recognizing sanctions may be imposed under Rule 9011 as well as inherent powers of court).

> warranted for effective deterrence, and order directing payment to the
> movant of some or all of the reasonable attorneys' fees and other
> expenses incurred as a direct result of the violation.

Rule 9011(c)(1)(A), (c)(2).

The Fifth Circuit has explained the method courts should use in calculating attorney's fees in the context of Rule 9011 violations, and the criteria are applied universally in bankruptcy attorney compensation matters. See In re Evergreen Security, Ltd, 384 B.R. 882, 925 (Bankr. M.D. Fla. 2008)(citing In the Matter of First Colonial Corp. of America, 544 F.2d 1291, 1299 (5th Cir. 1977) and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).  As explained by the Fifth Circuit in In re Fender, "[t]he Fifth Circuit uses the 'lodestar' method to calculate attorneys' fees" wherein "[t]he lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." In re Fender, 12 F.3d 480, 487 (5th Cir. 1994).  A court then adjusts the lodestar amount up or down, depending on the twelve factors enumerated in Johnson. 488 F.2d at 717-19.[28]

The Texas bankruptcy court in In re Porcheddu, 338 B.R. 729, 737 (Bankr. S.D. Tex. 2006), noted that, "Fender  merely stands for the proposition that any fee analysis in the Fifth Circuit is governed by Johnson. After applying the number of hours and the rate charged, the Court should make appropriate adjustments in accordance with the additional factors listed in Johnson."  See In

---

[28] The lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar.   The twelve *Johnson* factors are: (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

re Evergreen, 384 B.R. at 925 (applying Fifth Circuit reasonableness criteria for attorney's fees and costs in determining Rule 9011 sanctions); Cadle Company v. Pratt (In re Pratt), 524 F.3d 580, (5th Cir. 2008) (holding courts may refer to Rule 11 jurisprudence when considering sanctions under Rule 9011); Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 569 (5th Cir. 2006) (holding lower court's lodestar analysis and factual determination of reasonable number of hours expended in determining rule 9011 sanctions was not erroneous); In re Ktona, 329 B.R. 105, 109-10 (Bankr. M.D. Fla. 2005)(holding reasonableness of attorney's fees and costs for Rule 9011 sanctions is determined under First Colonial and Johnson criteria); In re Paige, 365 B.R. 632, 639 (Bankr. N.D. Tex. 2007)(noting the Fifth Circuit's decision in Skidmore that considered reasonable litigation expenses and attorney's fees as a measure of sanctions under Rule 11).

An additional criteria in the determination of whether a sanction is reasonable is the duty on the part of the  nonviolating party to mitigate fees and expenses.  Spiller v. Ella Smithers Geriatric Center, 919 F.2d 339, 347-48 (5th Cir. 1990)("finding an expense to be reasonable requires a court to examine 'the extent to which the nonviolating party's expenses and fees could have been avoided or were self-imposed.'")(quoting Thomas, 836 F.2d at 879)).  See also, Childs v. State Farm Mutual Automobile Insurance Co., 29 F.3d 1018, 1027 (5th Cir. 1994) ("actual expenses and attorney's fees are not necessarily reasonable  because the party seeking Rule 11 costs and attorney's fees has a duty to mitigate expenses by correlating his response in hours and funds expended to the merit of the claims"); In re Weaver, 307 B.R. 834, 847 (Bankr. S.D. Miss. 2002) ("a party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses" for them to be reasonable).

The district court in McLaurin v. Werner, 909 F. Supp. 447, 456 (S.D. Miss. 1995) also recognized the duty to mitigate when it stated:

> This court considers four factors in determining what sanction to impose: (1) what conduct is being punished or is sought to be deterred by the sanction; (2) what expenses or costs were caused by the violation of the rule; (3) were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention; and (4) whether the sanction imposed the least severe sanction adequate to achieve the purpose of the rule under which it was imposed. *Topalian v. Ehrman*, 3 F.3d 931, 936-37 (5th Cir.1993).

See also, Bruno v. Star, 2006 WL 2631861, *5 (E.D. La. 2006) (a party seeking Rule 11 damages must mitigate expenses).

In the present case, Dawn requests the attorney's fees and expenses it has incurred in response to the Bertucci Objection. Counsel for Dawn submitted his initial affidavit with its attached fees and expense itemizations (Dawn Exhibit No.3) in the amount of $7,300.00. After the Hearing, he filed his supplemental affidavit and fee and expense itemizations (Dkt. No. 216) for an additional $6,420.00. The Court has reviewed the affidavits and finds the charges for hours spent and expenses contained therein were caused by Bertucci's violation of Rule 9011. The Court further finds that the amounts requested are reasonable under all of the above criteria and under the specific facts and circumstances of this case, with the exception that the itemization in the supplemental affidavit for travel in the amount of $300.00 will not be allowed.

## Conclusion

Based upon the foregoing, the Court finds that the Bertucci Objection was not warranted by existing law, was not factually supported by evidence, and improperly delayed the proceedings. Sanctions for the reasonable amount of attorney's fees and expenses incurred by Dawn are appropriate and are awarded in the amount of $13,420.00 pursuant to Fed. R. Bankr. P. 9011, § 105(a), and the Court's inherent power.

A separate final judgment consistent with this Memorandum Opinion and Order will be entered by this Court in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.

IT IS, THEREFORE, ORDERED that the Motion for Sanctions is granted as set forth herein.

SO ORDERED.

_____

Neil P. Olack
United States Bankruptcy Judge
Dated: May 29, 2009